UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO RODRIGUEZ, and GUADALUPE HERERRA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>D.M. CAMP & SONS and DOES 1-20,<br><br>Defendants. | Case No.: 1:09-cv-00700-AWI-JLT<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT<br><br>(Doc. 37) |

Plaintiffs Fernando Rodriguez and Guadalupe Herrera ("Plaintiffs") seek preliminary approval of class settlement. (Doc. 37). By and through this motion, Plaintiffs seek: (1) conditional certification of the settlement class; (2) preliminary approval of the settlement; (3) appointment of Plaintiffs as class representatives; (4) appointment of Stan Mallison and Hector Martinez as class counsel; (5) approval of the class notice and related materials; (6) appointment of Simplurius, Inc., as the settlement administrator; and (7) scheduling for final approval of the settlement. (*Id.* at 2). Defendant D. M. Camp & Sons ("Defendant") has not opposed the motion.

The Court has considered the proposed settlement between the parties, and the proposed Notice, Claim, and Opt-Out Forms. On December 6, 2012, the Court heard the oral arguments of counsel. For the following reasons, Plaintiffs' motion for preliminary approval of class settlement is **GRANTED**.

1

**FACTUAL AND PROCEDURAL HISTORY**

On November 9, 2005, "Doe" plaintiffs initiated an action against table grape growers based in Kern County, including D.M. Camp & Sons; Stevco, Inc.; Marko Zaninovich, Inc.; Sunview Vineyards of California; Guimarra Vineyards Corp.; El Rancho Farms; Castlerock; and FAL, Inc.[1] *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008). Plaintiffs alleged that they were former and current employees of the defendants. *Id.* at 1156.

Defendants to the *Doe* action, including D.M. Camp & Sons, filed motions to dismiss the operative complaint, which were granted by the Court on March 31, 2008. Likewise, the Court granted motions to sever the action, and the Court required the plaintiffs to file amended pleadings against each defendant to effectuate the severance. On May 29, 2008, Fernando Rodriguez and Guadalupe Herrera were named as plaintiffs in the Third Amended Complaint against D.M. Camp & Sons. (*Doe*, Doc. 170). On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new case number within twenty days to finalize the severance. (*Doe*, Doc. 240).

On April 20, 2009, Plaintiffs filed their complaint against D.M. Camp & Sons. (Doc. 1 at 1). The complaint alleges: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq.*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq.*; breach of contract; and violation of unfair competition law. (*Id.*) Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." (*Id.* at 4).

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS.

The parties engaged in private mediation with Daniel Quinn, and the matter was resolved after "numerous sessions and telephone calls covering a period well in excess of one year." (Doc. 42 at 4; *see also* Doc. 36 at 2). Thereafter, Plaintiffs filed the motion for preliminary approval of class settlement on November 2, 2012 (Doc. 37), now pending before the Court.

## THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement amount of $675,000. (Settlement § III.A, Doc. 41-1 at 6). Defendant agrees to make payments totaling $675,000 to the settlement fund by January 15, 2012. (*Id.* § III.F.7; Doc. 42 at 4).

**I.      Payment Terms**

The settlement fund will cover payments to qualified class members with additional compensation to class representatives. (Settlement § III.B.1, Doc. 41-1 at 6). In addition, the Settlement provides for payments to class counsel for attorneys' fees and expenses, to the settlement administrator, and the California Labor & Workforce Development Agency. (Settlement § III.B; Doc. 41-1 at 6-7). Specifically, the settlement provides for the following payments from the gross settlement amount:

- Class representatives will receive up to $10,000 each;
- Class counsel will receive no more than $225,000 for attorneys' fees, which equals 33.33% of the gross settlement amount, and $15,000 for expenses;
- The California Labor and Workforce Development Agency shall receive $15,000; and
- The Settlement Administrator will receive up to $23,000 for fees and expenses.

(*Id.* at § III.B; Doc. 42 at 4-5). After these payments have been made, the remaining money ("Net Settlement Fund") will be distributed as settlement shares. (*Id.* at § III.D).

To receive a settlement share from the Net Settlement Fund, a class member must submit a timely and valid claim form. (Settlement §§ I.B, III.D). Settlement shares will be calculated based upon the following formula: "(a) the Claimant's total number of Months of Employment[2] during the

---

[2] "Months of Employment" is defined as "months during the Class Period that the Class Member was an active employee or joint employee of Defendant." (Settlement § I.U; Doc. 41-1 at 4).

3

Class Period[3] (b) divided by the aggregate number of Months of Employment of Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Fund." (*Id.* at § III.D.1). Consequently, the exact amount each receives depends upon how many other class members submit timely and valid claim forms. The entire Net Settlement Fund will be distributed, but if any checks are not cashed, that money will be distributed to the Community Action Partnership of Kern Food Bank.[4] (*Id.* at §§ III.F.10; Doc. 14-1 at 13-14).

## II.     Releases

The Settlement provides that Plaintiffs and class members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, shall release Defendant from the claims arising in the class period. Specifically, the release for class members provides:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendant, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims"). The Class's Released Claims are limited to the time period November 17, 2001 to December 31, 2006 for claims for alleged unpaid wages, overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.

(Settlement § III.G.2; Doc. 41-4 at 14-15). The release for Plaintiffs provides for "any and all claims arising from or related to the matters alleged in the Action." (*Id.* at § III.G.1). Thus, the release for class representatives encompasses more clans than the release of class members.

Defendants mutually release Plaintiffs and class members from "claims arising from or related to Defendant's employment during the time period November 17, 2001 to December 31, 2006 of Plaintiffs and Participating Class Members, including . . . all claims arising from or related to the matters alleged in the Action." (Settlement § III.G.3).

---

[3] "Class Period" is defined as "the period of time from November 17, 2001 to December 31, 2006." (Settlement, § I.K; Doc. 41-1 at 3).

[4] At the hearing on this motion, counsel agreed to work together to select a charity that would receive these funds. Within hours, counsel diligently reported to the Court that this charity was selected.

### III. Objections and Opt-Out Procedure

Any class member who wishes may object or elect not to participate in the Settlement. The Notice of Proposed Settlement ("the Notice") explains the procedures to "claim a share of the settlement, comment in favor of the settlement, object to the settlement, or elect not to participate in the settlement." (Doc. 41-2 at 2-3). In addition, the Notice explains claims that are released as part of the settlement. (*Id.* at 6-7). With the Notice, each class member will receive a claim form that sets forth the dates of employment and an estimate of his or her settlement share. (*Id.* at 6).

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I. Legal Standard

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

### II. Conditional Certification of a Settlement Class

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed class is comprised of "nonexempt field workers who have been employed or jointly employed by Defendant and any Farm Labor Contractor utilized on land owned by Defendant and as regular non-exempt grape worker agricultural employees between 2001 and 2006." (Doc. 41-1 at 1). Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23(c)(1), under which a court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." (Doc. 42 at 11) (quoting *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

**A.     Rule 23(a) Requirements**

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1.     Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). According to Plaintiffs, the class is comprised of "approximately 400 to 600 members." (Doc. 42 at 9). Therefore, the numerosity requirement is satisfied.

### 2.     Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same

pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551.  In this case, for purposes of settlement, the parties agree the following common questions of fact and law exist:

- whether Defendant failed to provide farm workers with required meal periods;
- whether Defendant failed to pay farm workers [sic] wages for meal periods during which they remained on duty;
- whether Defendant authorized and permitted the farm workers to take required rest periods;
- whether Defendant failed to pay farm workers an additional hour of wages for missed meal periods and rest breaks;
- whether Defendant failed to pay all legally required minimum wages and overtime compensation;
- whether hourly production workers are owed waiting time penalties because Defendant allegedly willfully failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and
- whether Defendant's business practices violated Business and Professions Code section 17200 *et seq*.

(Doc. 42 at 11-12).  Based upon the stipulation of the parties that these questions are shared by prospective class members, the Court finds this sufficient to satisfy the commonality requirement.

### 3. Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).

Review of the Complaint demonstrates Plaintiffs allege they were employed by Defendants during the relevant time period. (Doc. 1 at 2-3). The parties agree that Plaintiffs "were paid under the same pay practices as every other class member." (Doc. 42 at 12). In addition, they agree that

"Plaintiffs' claims are essentially identical with the class as a whole." (*Id.*)  Therefore, the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a. *Proposed class representatives*

Plaintiffs seek to appoint Plaintiffs Fernando Rodriguez and Guadalupe Herrera as class representatives.  (Doc. 37 at 2; Doc. 42 at 12).  Plaintiffs assert they "have the same interests as the remaining members of the Settlement Class [and] there is no conflict between the named Plaintiffs' claims and those of the other Class Members." (Doc. 42 at 12).  Accordingly, it appears Plaintiffs will fairly and adequately represent the interests of the class.

#### b. *Proposed class counsel*

Stan Mallison and Hector Martinez seek appointment as counsel for the settlement class.  (Doc. 37 at 2).  Mr. Mallison and Mr. Martinez have significant experience litigating wage and hour class action cases and in serving as class counsel.  (*See* Decl. of Mallison, Doc. 41 at 4-6). Mr. Mallison asserts "neither [he], nor any member of the firm, have any personal affiliation or family relationship with the plaintiffs and proposed Class Representatives." *Id.* at 7.  Defendant offers no opposition to the adequacy of counsel and, therefore, the Court finds counsel satisfy the adequacy requirements.

### B. Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiffs assert that "parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because 'questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair adjudication of the controversy.'" (Doc. 42 at 13) (quoting Fed. R. Civ. P. 23(b)(3)). Accordingly, the Court finds certification of the conditional settlement class is proper under Rule 23(b)(3).

### III.     Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[5] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). In review of the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.     Strength of Plaintiffs' Case

In this action, there are several disputed claims the fact-finder would be required to determine. Plaintiffs observe, "If the litigation proceeds, Plaintiffs would face significant risk of success." (Doc. 42 at 10). Further, Plaintiffs assert there is "a substantial risk that Defendant would prevail in its asserted defenses." *Id.* Given the uncertainties faced by Plaintiffs, this factor weighs in favor of preliminary approval of the class settlement.

---

[5] Because there is not a government participant in this action, this factor does not weigh in the Court's analysis.

**B.      Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further litigation, including recertification of the class and discovery on the issue of damages.  Plaintiffs contend this could "potentially outweigh[] any additional recovery obtained through successful litigation." (Doc. 42 at 10).  On the other hand, the proposed settlement provides for immediate recovery for the class.  Therefore, this factor weighs in favor of approval of the settlement.

**C.      Risk of Maintaining Class Status throughout the Trial**

Plaintiffs acknowledge that even if they demonstrate wage and hour violations by Defendant, "there would be substantial risk the Class would not be certified by the Court." (Doc. 42 at 10).  Thus, this factor supports preliminary approval of the settlement.

**D.      Amount Offered in Settlement**

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.* at 625, 628.  Here, the proposed gross settlement amount is $675,000.  Mr. Mallison asserts this amount "will not put . . . Defendants' operations at risk or endanger the continued employment of currently employed class members." (Mallison Decl. ¶ 45, Doc. 15 at 17-18).

Although, generally, orders approving class settlements compare the settlement amount to the total maximum liability estimated by the class counsel, here this information was not provided.  Nevertheless, the Court finds the amount offered in settlement supports approval of the settlement agreement.

**E.      Extent of Discovery Completed and Stage of the Proceedings**

Defendant has been litigating this action since 2004 and with the named Plaintiffs since 2005.  In the course of litigation, "Defendant produced various documents and data, including, payroll and

timekeeping records for Class Members during the Class Period." (Settlement § II.D, Doc. 41-1 at 5). According to Plaintiffs,

> After the complaint was filed, Plaintiffs conducted discovery including an extensive set of document requests demanding all of the critical payroll and timekeeping information at issue in this case, and the names and contact information for Defendant's former and current employees. After meeting and conferring regarding these issues, Defendant produced the core payroll and timekeeping information. Defendant's timekeeping and payroll system is heavily paper-based. Much of the data review required lengthy meetings with the plaintiffs, and other witnesses to review the data to ensure that Plaintiffs' analysis accurately reflected the evidence obtained and reasonably estimated the dates in this case.

(Doc. 42 at 4) (internal citations omitted). Accordingly, the parties made informed decisions regarding settlement of the action. Notably, as early as February 4, 2010, the parties reported they were "discussing mediation" (Doc. 18 at 2), and by May 25, 2011, the parties had "engaged in preliminary settlement discussions." (Doc. 25 at 2). The parties moved forward with the settlement discussions, and resolved the matter with the assistance of the mediator, Mr. Quinn. (Doc. 42 at 4). Consequently, this factor supports preliminary approval of the settlement agreement.

### F.   Experience and Views of Counsel

As addressed above, Plaintiffs' counsel are experienced in class action litigation. Based upon discovery conducted in the matter, Mr. Mallison asserts that "the terms set forth in the Settlement Agreement [are] fair, reasonable and adequate," and the settlement is "in the best interest of the putative class members." (Mallison Decl. ¶ 45, Doc. 41 at 14). Likewise, Defendants and their counsel "believe . . . the Agreement reflects a fair, reasonable, and adequate settlement of the Action." (*See* Settlement § III.I.9, Doc. 41-1 at 17). These recommendations of counsel are entitled to significant weight, and support approval of the settlement agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### G.   Reaction of Class Members to the Proposed Settlement

Plaintiffs have agreed to the terms of Settlement Agreement. (Rodriguez Decl. ¶ 10, Doc. 39 at 3; Herrera Decl. ¶ 10, Doc. 40 at 3). However, because class members have not yet received notice, this factor shall be revisited during and after the fairness hearing for final approval of the settlement.

///

### H. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiffs assert: "The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 42 at 8). The parties utilized an impartial mediator, and "settlement negotiations took over one year to complete." *Id.* at 9. Accordingly, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the settlement.

### I. Attorneys' Fees

Class counsel has requested attorneys' fees in the amount of "not more than 33.33% of the Gross Settlement Amount." (Settlement §III.B.2, Doc. 41-1 at 6). The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Because the amount of "not more than" a third of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by counsel for approval of fees.[6]

### J. Class Representative Enhancement

Class counsel requested a class representative enhancement up to $10,000 for each named plaintiff, to be paid from the Gross Settlement Amount. Enhancements for class representatives are not to be given routinely. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

---

[6] In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The Settlement explains that the enhancement is to be given to those identified "to compensate them for initiating the Action, performing work in support of the Action, and undertaking the risk of liability for attorneys' fees and expenses in the event they were unsuccessful in the prosecution of the Action." (Doc. 41-1 at 3). Notably, as discussed above, the named plaintiffs did not "initiate" this action. Likewise, there is no evidence to support the settlement agreement's explanation that any of the named plaintiffs or prospective class representatives agreed to pay attorneys' fees if the case failed. To the contrary, Mr. Mallison's explains"[t]he firm *chose* the proposed class representatives." (Mallison Decl. ¶ 17, Doc. 41 at 7) (emphasis added). Further, Mr. Mallison's declaration makes clear that his firm works only on a contingency fee basis (*Id.* at ¶ 53, Doc. 41 at 17).

At most, the evidence supports only that Plaintiffs assisted in the litigation. Mr. Mallison declares that they deserve of "the modest incentive award requested in this case" because they "spent considerable time in their efforts on behalf of the class." (Mallison Decl. ¶ 18, Doc. 41 at 8). Plaintiffs each report spending a total of 117[7] hours on tasks related to the case including:

| TASK | TIME |
|---|---|
| Initial Discussion with Counsel, including travel time | 6 hours |
| Review and Translation of Settlement | 3 hours |
| Review and Translation of Complaint | 3 hours |
| Gathering, Reviewing, and Organizing records for investigation | 6 hours |
| Consultation with Class Counsel and Plaintiffs regarding the status of case | 20 hours |
| Helping attorneys with investigative processes | 40 hours |
| Mediation in Bakersfield, CA, including travel time & Preparation | 9 hours |

---

[7] The Court finds dubious that each class representative spent the *exact* same number of hours on the *exact* same tasks, including the same *exact* amount of travel time from their homes to the places of mediation. This is not the first case involving Plaintiff's counsel where this has occurred. *Morales et al. v. Stevco, Inc., et al.,* Case No. 1:09-cv-00704, Doc. 66 at 26.

Because counsel are bound by a duty of honesty to the Court and that the class representatives have signed their declarations *under penalty of perjury*, the Court accepts these representations as true. However, the Court will be hard-pressed to accept such an improbable representation a third time absent significant explanation.

| Mediation in Stockton, CA, including travel time & Preparation | 18 hours |
|---|---|
| Deposition, including travel time & Deposition Preparation | 12 hours |

(Rodriguez Decl. ¶ 10; Herrera Decl. ¶ 10).  Given the flexibility for an award *up to* $10,000 to the class representatives, approval of a class representative enhancement is appropriate.[8]

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## I.     Content of the Notice

Plaintiffs have submitted the proposed Notice, Claim Form, and Opt-Out Form (collectively "Notice Packet").  Upon review of the proposed Notice Packet, the Court finds the content is adequate. It provides information regarding the background of the action and claims asserted.  The Notice explains the terms and provisions of the settlement, including the payments from the gross settlement fund.  In addition, the Notice explains the rights and procedures to "claim a share of the settlement, comment in favor of the settlement, object to the settlement, or elect not to participate in the settlement," and will include the applicable deadlines.  (Doc. 41-2 at 2-3).  Finally, the Notice Packet

---

[8] Notably, a class representative enhancement of $10,000 appears to be excessive.  *Wade v. Minatta Transp. Co.*, 2012 U.S. Dist. LEXIS 12057 (N.D. Cal. Feb. 1, 2012) (finding the class representatives, who reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement" failed to justify an incentive award of $10,000); *see also Alvarado v. Nederend*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011) (awarding $7,500 to class representatives); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (approving "incentive awards of $7,500 per class representative as compensation for their involvement in the case for the past five years, including appearing for depositions, assisting with written discovery, and working with Class Counsel to manage the settlement process").

will provide an estimate of the class member's share based upon the months of employment by Defendants, and explains the effect of the judgment and settlement.

### A. Method and Administration of Notice Packet

No later than 14 days after entry of this Order, the parties will provide to the Settlement Administrator a list of the data they have for each class member, including: name; last-known mailing address and telephone number; Social Security number; employee identification number with Defendants, if any; and the class member's months of employment in a covered position. (Settlement § III.F.2, Doc. 41-1 at 9). This information shall remain confidential. (*Id.*) Within 10 days of receiving this data, the Settlement Administrator will mail the Notice Packets to all class members. (*Id.*) For any Notice Packet returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice Packet within 10 days. (*Id.*)

At least 14 days prior to the deadline for submission of Claims Forms, the Settlement Administrator will attempt to contact class members who have not submitted the form and remind them of the deadline. (Settlement § III.F.2, Doc. 41-1 at 10). No later than the date by which the parties file their joint motion for final approval of settlement, the Settlement Administrator will serve the parties and file with the Court a "declaration of due diligence setting forth its compliance with its obligations under [the Settlement Agreement]." (*Id.*)

Class members must submit and postmark their Claim Form to the Settlement Administrator within 45 days of the date on which the Notice Packets are mailed. (Settlement § III.F.3, Doc. 41-1 at 10). If the form is completed improperly or is deficient in one or more respects, the Settlement Administrator will return the form within 7 days, and the class member will have 10 days from the date of the deficiency notice to correct and re-submit the form. (*Id*.) Likewise, class members who elect not to participate in the settlement will have 45 days to complete an Opt-Out Form. (*Id.*, Doc. 41-1 at 11). A class member who completes the Opt-Out Form will not be bound by the Settlement or final judgment. (*Id.*)

Class members who wish to object or comment on the Settlement must serve the parties and file with the Court "a written comment on or objection to the Settlement setting forth the grounds for the comment or objection" within 60 days after mailing of the Notice Packet. (Settlement § III.F.4,

Doc. 41-1 at 11).  In addition, the written statement must indicate whether the class member intends to appear at hearing.  (*Id.*)

### B. Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines for Claim Forms, Opt-Out Forms, opposition, comment, or support statements.  Likewise, the Claim Form must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator.

## II. Spanish Language Translation

The Notice refers to a Spanish language translation.  This Court requires a declaration that the Notice was translated by a certified court interpreter and attesting that the translation was an accurate translation of the Court-approved English version of the Notice.  However, no declaration has been provided regarding the Spanish language translation.  Accordingly, the parties **SHALL** submit the required declaration **no later than five days** after approval of the revised Notice.

### APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Simpluris, Inc., ("Simpluris") to serve as the Settlement Administrator.  Under the terms of the proposed Settlement, duties of the Settlement Administrator include:

> preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a National Change of Address search on any Class Notice Packet returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice Packet to the Class Member's new address; receiving and reviewing for validity completed Claim Forms and Elections Not to Participate in Settlement; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed Claim Forms and Elections Not to Participate in Settlement; providing the parties with the received Claim Forms; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; distributing any remaining funds as directed by the court; and otherwise administering the Settlement pursuant to this Agreement.

(Settlement § III.E, Doc. 41-1 at 7-8).  In addition, the Settlement Administrator will have the final authority to result disputes regarding the calculation of a class member's settlement share. (*Id.*). Simpluris "is experienced in administering wage-and-hour class action settlements, and . . . bid its fees and costs for this Settlement at $20,000 (with a cap of $23,000)." (Doc. 42 at 14).  Based upon the recommendation of parties, Simpluris is appointed as the Settlement Administrator.

**CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

   > All nonexempt field workers who have been employed or jointly employed by Defendant and any Farm Labor Contractor utilized on land owned by Defendant and as regular non-exempt grape worker agricultural employees between 2001 and 2006.

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The propose notice plan is **APPROVED**;

4. Plaintiffs Fernando Rodriguez and Guadalupe Herrera are **APPOINTED** as Class Representatives for the Settlement Class;

5. Stan Mallison, Esq., and Hector Martinez, Esq., are **APPOINTED** Class Counsel;

6. Simpluris, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7. The class representative enhancement request for Plaintiffs is **GRANTED** preliminarily up to the amount of $10,000, subject to a petition and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's motion for attorneys' fees of not more than 33 1/3% of the gross settlement amount plus not more than $15,000 in costs is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **February 27, 2013**;

10. Costs of settlement administration shall not exceed $20,000;

11. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **December 13, 2012**;

12. Within five days of the Court's approval of the finalized Notice, the parties **SHALL** file a declaration by the certified court interpreter who translated the Notice into Spanish attesting that the translation is an accurate translation;

13. The parties **SHALL** provide the Settlement Administrator with the Class Data no later than within no later than **December 20, 2012**;

14. The Settlement Administrator **SHALL** mail the approved Class Notice Packet no more than **January 4, 2013**;

15. Any Class Member who submits a timely and valid Claim Form on or before **February 18, 2013** SHALL receive a settlement share;

16. A class member who wishes to be excluded from settlement shall postmark the Opt-Out Form no later than **February 18, 2013**;

17. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to Class Counsel no later than **February 18, 2013**;

18. A Final Approval and Fairness Hearing is SET for **March 20, 2013** at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall

hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

19. Class Members may appear at the hearing **March 20, 2013**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member **must file** comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

20. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **February 18, 2013**;

21. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

22. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated: **December 6, 2012**           **/s/ Jennifer L. Thurston**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE