STAN S. MALLISON (Bar No. 184191)
  StanM@TheMMLawFirm.com
HECTOR R. MARTINEZ (Bar No. 206336)
  HectorM@TheMMLawFirm.com
MARCO A. PALAU (Bar No. 242340)
  MPalau@TheMMLawFirm.com
JOSEPH D. SUTTON (Bar No. 269951)
  JSutton@TheMMLawFirm.com
**MALLISON & MARTINEZ**
1939 Harrison Street, Suite 730
Oakland, California  94612-3547
Telephone: (510) 832-9999
Facsimile:  (510) 832-1101

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA -- FRESNO DIVISION

| | |
|---|---|
| FERNANDO RODRIGUEZ and GUADALUPE HERRERA et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>D.M. CAMP & SONS and DOES 1-20,<br><br>Defendant. | **CASE NO. 1:09-CV-0700-AWI-JLT**<br><br>**DECLARATION OF STAN MALLISON IN SUPPORT OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:     May 22, 2013<br>Time:    9:00 a.m.<br><br>*Magistrate Judge Jennifer L. Thurston* |

I, Stan S. Mallison, declare the following:

1.  I am an attorney at law licensed to practice before all courts of the State of California and am a founding partner of Mallison & Martinez. My firm and I are counsel for the Plaintiffs, in the above-captioned case. I am familiar with the above-captioned litigation and the dispute from which it arises. All statements made herein are on personal knowledge unless otherwise stated. If called as a witness, I could competently testify as to matters stated herein.

2.  This is a wage and hour class action on behalf of farmworkers working at DM Camp field between November 17, 2001 and December 31, 2006.  The action is brought for alleged violations of California and federal labor laws.  Plaintiffs also seek penalties for themselves, and other current and former employees, and the State of California pursuant to the California Labor Code Private Attorney General Act.

## I. COUNSEL'S QUALIFICATIONS

### A. Mallison & Martinez Firm Description

3.  The Law Offices of Mallison & Martinez is a class action law firm with offices in Oakland and Bakersfield, California.  This firm was created in 2005 by Stan Mallison and Hector Martinez, attorneys with extensive class action and complex litigation experience at: (1) Lerach Coughlin Stoia & Robbins, (2) Milberg, Weiss, Bershad, Hynes, & Lerach, (3) Van Bourg Weinberg Roger & Rosenfeld (the largest union side labor law firm in the country), (4) Carter & Garay (a boutique class action law firm), and (5) California Rural Legal Assistance (the largest federal legal services provider to farm-workers in the country).  The firm is nearly exclusively engaged in class action and private attorney general practice in employment law on behalf of employees.  We have four full time attorneys on staff (three of whom are Spanish speakers), and numerous support and professional staff (all of whom speak Spanish and a translator for Mixteco speaking clients and witnesses).  Mallison & Martinez researches and develops class action wage cases and litigates them often with prominent co-counsel.

4.  The firm employs a "research model" approach to wage and hour class action litigation. We do this by, where appropriate, relying heavily upon technology, investing enormous amounts of time

and energy into legal and factual investigations, both pre-filing and early in the litigation, and by developing comprehensive factual and legal expertise in the specialized areas in which we litigate.

5. The success of this model is exemplified by the following sample of cases the firm is currently litigating or has resolved:

   a. <u>In re: Rhodia Erisa Litigation:</u> (Southern District of New York). This was ERISA Class Action on behalf of 3,945 workers of Rhodia, Inc. Appointed Co-lead Counsel with Robbins Umeda & Fink. (Class settlement approved for $2.4 million).

   b. <u>Ibañez et al. v. Food Specialists Inc. et al.:</u> (Alameda Superior Court - Complex). This was a class action wage and hour case on behalf of 950 food service employees of Scott's Seafood Restaurants. Mallison & Martinez is the class counsel. (Class settlement approved for $1.485 million).

   c. <u>Korbel Winery:</u> (Eastern District of California). This was a mid-sized wage and hour class action case involving approximately 600 winery workers. Mallison & Martinez has been appointed Class Counsel. (Class settlement approved for $750,000).

   d. <u>Don Roberto Jewelers (retail worker's case):</u> (Santa Barbara Superior Court). This was a wage and hour class action involving approximately 1400 retail workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement granted final approval for $1.225 million).

   e. <u>Glenn Block v. eBay, Inc.:</u> (Santa Clara Superior Court). This was a consumer class action case filed on behalf of several numerous eBay consumers who were impacted by eBay's "bid against yourself" policy (co-counsel Lerach Coughlin Stoia Geller Rudman & Robbins). (Class settlement approved for $2.1 million).

   f. <u>Benitez et al. v. Wilbur et al.:</u> (Eastern District of California). This was a class action wage and hour case on behalf of a class of dairy workers who were (1) not paid all wages largely due to being paid a fixed salary without regard to actual hours worked and (2) due to the employer's failure to record time. Mallison & Martinez is sole counsel. ($400,000 settlement granted final approval.)

   g. <u>MAT Landscape:</u> (San Joaquin Superior Court). This was a mid-sized wage and hour case involving hundreds of Landscape workers. Mallison & Martinez is co-counsel with California Rural Legal Assistance. (Settlement for $700,000 approved)

   h. <u>Vasquez v. Coast Roofing:</u> (Eastern District of California). This was a mid-sized wage and hour class action case involving hundreds of roofing workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement for $250,000 granted final approval).

   i. <u>Lara et al. v. Sierra La Verne Country Club:</u> (Los Angeles Superior Court). This was a mid-sized wage and hour class action on behalf of service workers. Mallison & Martinez is originating counsel and co-counsels the case with Rastegar & Mattern. ($725,000 class settlement approved).

3

DECLARATION OF STAN MALLISON IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT                    CASE NO. 1:09-CV-00700-AWI-JLT

    j.    <u>Morales v. Stevco, Inc.</u>: (Eastern District of California): This is a mid-sized wage and hour class action settlement for grape field workers. (925,000 preliminarily approved).

    k.    <u>Don Roberto Jewelers (credit worker's case)</u>: (Santa Barbara Superior Court). This is a wage and hour class action involving approximately 1000 retail workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement granted final approval for $875,000).

    l.    <u>TBS Couriers</u>: (Alameda County Superior Court). This is a set of two mid-sized wage and hour class action cases involving hundreds of delivery drivers. Mallison & Martinez is sole counsel in these coordinated actions (awaiting trial decision).

The above listing is just a sample of the more than 50 wage and hour class action cases that Mallison & Martinez have been involved with since forming in 2005.

**B.**    **Attorneys on the Case**

6.    I, Stan Mallison, am a former meat cutter and baker. After returning to school I received my Bachelor of Art degrees in Philosophy and Political Science from the California Polytechnic University at Pomona, California in 1990, graduating magna cum laude and first in both departments. I earned my Masters in Economics from the University of California at Riverside in 1993, where I had been admitted to, and substantially progressed through, the Economics Ph.D program. I earned my law degree from Stanford University in 1996, graduating with honors. During law school, I interned with the National Labor Relations Board ("NLRB"), both at the Division of Judges in San Francisco as well under the direct supervision of Chairman of the NLRB William B. Gould in Washington D.C.

7.    Between 1996 and 1998, I worked in complex labor and employment litigation for the law firm of Van Bourg, Weinberg Roger and Rosenfeld, the largest union-side labor law firm in the country.

8.    From 1998 to 2004 I worked for Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") and joined Lerach Coughlin Stoia & Robbins ("Lerach Coughlin") when the Milberg firm divided in 2004 working there until February 2005. My work at these firms consisted of class action and private attorney general act work and included work on complex and large cases including: In Re Enron Securities Litigation ($7.2 Billion settlement); Mariana Island Garment-Worker Cases (a $20 million wage and hour settlement on behalf of 20,000 migrant workers on the island of Saipan); In Re

4

DECLARATION OF STAN MALLISON IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT    CASE NO. 1:09-CV-00700-AWI-JLT

3Com Securities Class Action ($259 million settlement), a Federal Court challenge to the sufficiency of Federal Department of Transportation's NAFTA Truck safety regulations; In re Pemstar Securities (settlement of $12 million); Block v. eBay (settlement of $2.1 million); a Federal Court challenge to Presidential Executive Order re: Project Labor Agreements, and dozens of other cases. As a result of my expertise in economics, I spent a considerable amount of his time at Milberg Weiss and Lerach Coughlin as liaison to economic experts and I continue in that role at Mallison & Martinez.

9. Since starting Mallison & Martinez with Hector Martinez, we have filed over 50 employment class action cases. In the Erisa Class Action case, in re Rhodia Erisa Securities, the court approved our fee request that was justified based upon a fee rate of $525 and a multiplier of 1.59 (or an effective rate of $835 an hour). Fee awards for the firm several years ago were based, in part, upon my rate of $525 including: 1) by Judge Brick of the Alameda Superior Court in Ibañez et al. v. Food Specialists Inc. (Case No. RG 06 293981), 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS), 3) by Judge Staffel of the Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). My 2010 class action rate was $595 that was the basis for awards in several additional cases including: Rodriguez v. Boschma et al (Case No. 1:09-cv-02044-LJO-JLT). In 2012, we raised my rate to $650 an hour that has recently served as the basis for an award in the California Superior Court in the Milgard case (L.A. Superior Case No. BC449639) as well as in Zacapa v. Don Roberto, Case No. 1376022 (Santa Barbara Superior Court). As a result, I believe that my wage and hour class action rate of $650 an hour is a fair rate for my work given my experience level and success in this field.

10. Mr. Martinez received his Political Science Bachelor of Art degree in 1993 from the University of California at Davis. Mr. Martinez grew up in a socially conscious farm-worker community, which motivated Mr. Martinez to work for the benefit of low-wage workers. Beginning in the mid-nineties, at the California Institute for Rural Studies, Mr. Martinez conducted extensive research on California's agricultural industry and the substandard environmental, health and working conditions and its impact on farmworkers and their families. Mr. Martinez then attended law school and earned his law degree from the Golden Gate University School of Law in 1998. During his law studies, he worked as a law clerk with Van Bourg, Weinberg, Roger and Rosenfeld, the largest union-side labor law firm in

the country, under the direct supervision of named partner David Rosenfeld. From 1999 to 2004, Mr. Martinez worked at California Rural Legal Assistance, Inc. ("CRLA"), the largest non-profit law firm dedicated to farm-worker issues in the country. His work at CLRA included numerous representative private attorneys general actions under California's Unfair Competition Law, Business & Professions Code Sections 17200 *et seq.*, which were brought on behalf of thousands of agricultural employees and the general public. During his time with CRLA, Mr. Martinez was nominated for and received a fellowship with the California Wellness Foundation Violence Prevention Initiative, for his work with farm-worker youth throughout California.

11.     Since starting Mallison & Martinez with Hector Martinez, we have filed over 50 wage and hour class action cases. In the Erisa Class Action case, in re Rhodia Erisa Securities, the court approved our fee request that was justified based upon a fee rate of $525 and a multiplier of 1.59 (or an effective rate of $835 an hour). Fee awards for the firm have recently been awarded based, in part, upon my rate of $525 in several additional cases including: 1) by Judge Brick of the Alameda Superior Court in Ibañez et al. v. Food Specialists Inc. (Case No. RG 06 293981), 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS), 3) by Judge Staffel of the Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). Mr. Martinez's 2010 class action rate was $595 that was the basis for awards in several additional cases including: Rodriguez v. Boschma et al (Case No. 1:09-cv-02044-LJO-JLT). More recently, my firm has raised my rate to $650 an hour that has recently served as the basis for an award in the California Superior Court in the Milgard case (L.A. Superior Case No. BC449639) as well as in Zacapa v. Don Roberto, Case No. 1376022 (Santa Barbara Superior Court). As a result, I believe that Mr. Martinez's wage and hour class action rate of $650 an hour is a fair rate for my work given my experience level and success in this field. As a result, I believe that his wage and hour class action rate of $650 an hour is a fair rate for Mr. Martinez's work given my experience level and success in this field.

12.     Mr. Palau is admitted to practice law in California and New York. He represents workers in wage and hour class actions and employment discrimination. Mr. Palau earned is law degree from Columbia University, New York in 2005, where he served as an Editor for the Columbia Human Rights

Law Review and Co-Managing Editor for the Jailhouse Lawyer's Manual (Spanish ed.). He earned MBA and BS degrees from California State University in 1999 and 1997, respectively. Prior to joining Mallison & Martinez, Mr. Palau was a staff attorney with California Rural Legal Assistance ("CRLA"), where he represented indigent individuals in civil rights matters, including federally subsidized housing and worker's rights issues. Mr. Palau is currently litigating dozens of class actions and employment discrimination as an experienced mid-level wage and hour attorney at Mallison & Martinez. Mr. Palau was named "Rising Star" in Northern California by *Super Lawyers* Magazine in 2011.

13. Since starting Mallison & Martinez with Hector Martinez, Mr. Palau has litigated in dozens of wage and hour class action cases. Fee awards for the firm have recently been awarded based, in part, upon his rate of $475, for example, in the Milgard case (L.A. Superior Case No. BC449639) as well as in Zacapa v. Don Roberto, Case No. 1376022 (Santa Barbara Superior Court). As a result, I believe that his wage and hour class action rate of $525 an hour is a fair rate for his work given his experience level and success in this field.

14. Mr. Sutton is a mid-level associate at Mallison & Martinez and is admitted to practice before the California State Courts. Mr. Sutton's practice is focused on employment litigation, including wage and hour, sexual harassment and discrimination matters. I believe that a fair current rate for Mr. Sutton's work in contingent wage and hour class action cases, for purposes of lodestar cross-check analysis, is $425 an hour. Fee awards for the firm have recently been awarded based, in part, upon his prior 2011 rate of $375, for example, in the Milgard case (L.A. Superior Case No. BC449639) as well as in Zacapa v. Don Roberto, Case No. 1376022 (Santa Barbara Superior Court).

15. Mallison & Martinez has had, and continues to have adequate resources to vigorously prosecute this case on behalf of the Class representatives and the Class members. Plaintiffs' counsel has spared no expense or taken any short cuts in this litigation and has hired a prominent database consultant for this case to aid in the confirmatory discovery in this case.

16. Neither I, nor any member of the firm, have any personal affiliation or family relationship with the plaintiffs and proposed Class Representatives. The only relationship with these plaintiffs in this current litigation is the attorney-client relationship.

17. The firm chose the proposed class representatives because we believed that they provided good representation of the breadth of the class, both in terms of job categories, geographic location, and employment status.

18. The class representatives carried out all required tasks in this case to help us pursue this action, providing us with information, documents, insights, opinions, and necessary decisions to make this case successful. The class representatives spent considerable time in their efforts on behalf of the class and deserve the modest incentive award requested in this case.

## II.   ALLEGATIONS OF THE COMPLAINT

19. The core of Defendant's violations revolve around the systematic failure to pay minimum and overtime wages; failure to keep accurate time records; reimbursement claims, failure to provide meal or rest breaks (or pay the statutory compensation due); and other related wage and hour penalties.

### A.   Overtime & Regular Wages

20. Plaintiffs allege that Defendant failed to pay for all time worked wages. This claim largely stems from the practice of not paying field workers for all time worked including pre and post shift activities and "home" cleaning of grape trays.

21. California Wage Orders requires payment of overtime for agricultural work in excess of 10 hours in a day. Plaintiffs, individually and on behalf of the Class, may enforce this requirement pursuant to Labor Code §1194(a).

22. Pursuant to Labor Code § 1194, Defendant's practices constitute a minimum wage violation and Defendant is liable for wages and liquidated damages. In addition, this unpaid time is also recoverable as overtime to the extent that including this time would put an employee over ten hours in a day or sixty in a week.

### B.   Failure to Provide Meal Periods

23. Plaintiffs allege that Class members are not provided with proper timely meal periods. The wage orders issued by the Industrial Welfare Commission provides for full 30 minute meal periods

for all shifts in excess of six hours and two full 30 minutes meal periods for shifts in excess of 10 hours. Plaintiffs allege that proper meal periods were not provided to employees in this case.

24. Pursuant to California Labor Code §226.7, employers are required to pay additional wages for failure to provide meal periods in conformance with Wage Order 14.

25. California Labor Code §226.7 states:
(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Here, plaintiffs' claims revolve largely around Defendant's provision of "late" meal periods – meals that occur more than five hours after the beginning of the shift.

C. **Rest Period Wages**

26. Plaintiffs allege that they were not provided proper timely rest periods or paid additional wages in lieu thereof. Defendant did not schedule rest periods and actually discouraged employees from taking them, by overworking employees. California Labor Code §226.7 states:
(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

27. The requirements are found in section 12 of Industrial Welfare Commission Wage Orders which requires the employees be provided with one ten minute rest break for every four hours of work or major fraction thereof.

D. **Wage Statement Violations**

28. Plaintiffs also allege that Defendant violated Labor Code § 226 by failing to provide accurate, itemized wage statements, in that the wage statements do not account for all hours worked

(e.g., off-the-clock) and, consequently, do not account for all regular and overtime wages owed (e.g., off-the-clock time).  In other words, Defendant failed to provide "accurate itemized statements" pursuant to California Labor Code 226 because the wage statements:

    a.    Falsely understated the gross wages earned by failing to pay for all hours worked.

    b.    Omitted or falsely understated the total hours worked.

    c.    Falsely stated the net wages earned.

29.    California Labor Code § 226(e) and (g) provides for penalties for the violations described above.

### E.    Waiting Time Penalties

30.    Plaintiffs also allege that Defendant failed to timely pay plaintiffs and terminated class members their full pay at the time of termination.  Plaintiffs believe that based upon the various violations, rest and meal, overtime or unpaid wages, essentially all terminated employees were not paid all of their wages within 30 days of termination.

31.    California Labor Code Sections 201 and 202 provide that such payment must be made within a few days of such termination. Defendant failed to timely pay Plaintiffs and the Class all of their wages due for work performed and this failure continued through the time in which Plaintiffs and the Class quit or were discharged from their employment with Defendant.  As a result, Defendant has violated California Labor Codes §§ 201 and 202.  As such, Plaintiffs and the class are entitled to penalties pursuant to California Labor Code §203.

## III.    Litigation History of this Case

32.    After the complaint was filed, Plaintiffs conducted substantial discovery regarding class certification and the merits of their claims.  After meeting and conferring regarding these issues, and after agreeing upon a protective order, Defendant provided access to the core payroll and timekeeping information comprising the timekeeping records at issue.  Plaintiffs also extensively contacted class members to interview them to determine and document the labor practices of Defendant.

33. Defendant's timekeeping and payroll system is heavily paper based requiring Plaintiffs counsel to laborious review and analyze these records.  Much of the document and data review took place with Plaintiffs and other witnesses who guided counsel through their own time and payroll records, strengthening counsel's understanding of the case, as well as their ability to litigate and mediate the case effectively. These records were core to the investigation and resolution of this case as it demonstrated in an objective manner what occurred during the class period.

34. Plaintiffs also contacted a large number of the class members spanning seven years to confirm the basic allegations of the complaint and to arrange for declarants for mediation, litigation, class certification, and trial purposes.

## IV. Settlement

35. This case was resolved through the efforts of mediator Daniel Quinn and resolved after mutilple days of mediation over more than a year, and after more than a dozen phone calls by the mediator.  Plaintiffs' counsel has negotiated numerous class action wage and hour settlements and believes that the settlement was improved by the use of Daniel Quinn in this case.  The Settlement covers approximately 400-600 core agricultural employees who worked between November 17, 2001 December 31, 2006 and provides substantial recovery for class members as well as over 1000 extremely short term employees for whom very little information – often including a lack of address or social security numbers are known.

36. Under the Settlement, Defendant will immediately make Gross Settlement Payments totaling $675,000 divided into two payments:  1) $250,000 by December 31, 2012 and 2) the remaining $425,000 by January 15, 2013.

37. The payment will cover Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; the Settlement Administrator's reasonable fees and expenses capped at $23,000 which is typical of wage and hour cases of this size and complexity; and payments to Plaintiffs, in addition to their Settlement Shares, of up to $10,000 each in compensation of their services as Class Representatives and payments to Class Counsel of no more than 33 1/3% of the Gross Settlement Amount for their reasonable attorneys' fees and $15,000 in expenses

incurred in investigating the case, prosecuting the case, preparing for and mediating the case, documenting the Settlement, securing approval of the Settlement, and related tasks.  Settlement, § III.A.-C.  There will be no reversion of the Gross Settlement Payment to Defendant.  III.A.

38. After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (Settlement §III), based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount

Agreement, § III.D.  The primary benefit of this formula is that it relies upon objective evidence of the term of employment, which Class Members can easily review and confirm for themselves.  This information is readily available from Defendant's records, and the Settlement Administrator can apply the formula in a fair and transparent manner.

39. Plaintiffs' counsel has reviewed this method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability.  Plaintiffs' counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to a myriad of objections regarding their formulation and implementation.   The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked.  *Id.* Further, although their might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary and to make such calculations (especially given Defendant's paper based payroll system) would likely outweigh any benefits of using a more complex calculation method.  The above method is simple, efficient, and uncontroversial and should be approved by the court.

40.     In the event that not all Class Members submit claims, the residue will be redistributed to those Class Members who do submit valid claims.  Settlement, § III.D.  The settlement agreement provides that that in the event that checks issued to Class Members are not cashed, these monies will be donated to a charity approved by the Court.  Id., § III.F.10.

41.     The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendant, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims").  The Class's Released Claims are limited to the time period November 17, 2001 to December 31, 2006 for claims for alleged unpaid wages, overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.=

Ex 1 § III.G.2. Defendant mutually release Participating Class Members of any wage related claims.

42.     Any Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement.  The Class Notice fully explains the objection/comment and opt-in procedures.  Ex. 1 § III.F.4.

43.     By the current motion tPlaintiffs and their counsel seek, and Defendant has agreed not to oppose, awards to Plaintiffs of Class Representative Payments of up to $10,000 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives and awards to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than 33 1/3% of the Gross Settlement Amount and a Class Counsel Litigation Expenses Payment of not more than $15,000. Settlement, § III.B.1-2.

**V.     Opinion of Class Counsel**

44.     Plaintiffs have conducted substantial document discovery regarding merits and have utilized a leading expert Aaron Woolfson.  Plaintiffs' counsel is of the view that central to any certification, litigation, mediation or resolution of a wage and hour case is obtaining the core payroll and

timekeeping records. Plaintiffs issued document requests and interrogatories to Defendant requesting the critical documents at issue in this case including Defendant's electronic payroll and timekeeping documents and the names and contact information for Defendant's former and current employees. After meeting and conferring regarding these issues, and in response to these requests, Defendant produced the core payroll and timekeeping information in this case. Defendant's timekeeping system is paper based requiring Plaintiffs to laboriously review. Much of the document and data review took place with clients and other witnesses who guided counsel through their employee time and payroll records strengthening Plaintiffs counsel's understanding of the case, as well as Plaintiffs counsel's ability to litigate effectively.

45. Based on Mallison & Martinez's investigation and discovery in this case and in consultation with the proposed Class Representatives and experts, I am of the opinion that the class settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate and is in the best interest of the putative class members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, the amount of potential damages in this case and uncertainties regarding class certification, success on the merits at trial and potential appellate review. It is my understanding and belief that the amount in question will not put As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendant, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims"). The Class's Released Claims are limited to the time period November 17, 2001 to December 31, 2006 for claims for alleged unpaid wages, overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses. Defendant's operations at risk or endanger the continued employment of currently employed class members. Defendant contests liability in this action, is represented by talented counsel, and is prepared to

vigorously defend against these claims if the action is not settled. If the litigation proceeds, Plaintiffs would face significant risk of success. There is also a substantial risk that Defendant would prevail in its asserted defenses.

46. The Settlement provides for a substantial recovery. Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. In any case, continued litigation would clearly delay payment to the Class. As such, the Settlement with Defendant for the consideration stated, and on the terms set forth in the Settlement, is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay. The Settlement is in the best interest of judicial efficiency in this case as it would eliminate a lengthy and intense class action lawsuit from this court's calendar. Plaintiffs' counsel also reviewed these records and believes that, absent such a payment structure, it would have been difficult to obtain the scope of relief contained in this settlement agreement.

47. Since being retained by the proposed class representatives, Mallison & Martinez has had regular discussions and meetings with them regarding the progress of this litigation, the merits of the claims and the defenses asserted by Defendant.

48. The Class Representatives have actively participated in my investigation of the issues in this case and the negotiations leading to the settlement of this matter. Plaintiffs' claims are essentially identical with the class as whole as they are agricultural field workers who were paid under the same pay practices as every other class member.

49. The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. The Settlement is the product of non-collusive negotiations. For its part, Defendant contests liability in this action, is represented by talented counsel, and is prepared to vigorously defend against these claims if the action is not settled.

50. The Settlement provides for a payment of $675,000 by January 15, 2013, to be paid by Defendant to cover all claims in this case - an adequate amount given the modest size of the class, the serious financial condition of Defendant, and the limited nature of the alleged violations at issue. The

parties anticipate and will work towards ensuring a high claims rate, however, if there are unclaimed funds, all the these funds will be redistributed pro-rata to class member claimants in this case. The Settlement also provides that the funds from any claim checks that are actually written but not cashed will be provided to a charity approved by the Court on final approval. Plaintiffs contend (and Defendant will not contest) that both the Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate. Such matters will be determined by court approval at the Final Approval hearing. Finally, the Settlement Administrator's fees of $23,000 are in line, or lower than comparable wage-and-hour settlements of this type and size.

51.     Based upon my conversations with them, and their declaration filed herewith, I know that Class Representatives believe that the settlement is fair and reasonable to all former and current Defendant workers and should be approved by the Court. Class Representatives will provide detailed declarations in support of the final approval of this settlement.

## VI.     Fees, Expenses, Claims Administration, and Incentive Awards

52.     I have practiced class action litigation almost exclusively for more than a decade and am familiar with attorneys fees, cost, and incentive award issues. I continue to co-counsel numerous cases with large class action firms and therefore interact with them on these issues regularly. I am a member of the California Employment Lawyers Association ("CELA") and I am therefore in regular contact with other California attorneys who practice in the field of wage and hour class actions. Based on my participation in these organizations, my past experience, and my personal knowledge of the practices of other California attorneys who file and prosecute wage and hour class actions, a percentage of the recovery contingency fee of the type requested here is common in small wage and hour actions, both individual and class. Such a fee is necessary given the expenses and risk of wage and hour litigation. Notably, there are very few law firms litigating wage and hour claims on behalf of low income construction workers in the Central Valley largely because they find these expenses and risks make such litigation undesirable and unprofitable.

53.     100% of Mallison & Martinez's legal practice involves legal work that is on a contingency fee basis. Despite my firm's strong public interest perspective, my firm would not have

16
DECLARATION OF STAN MALLISON IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO. 1:09-CV-00700-AWI-JLT

agreed to represent plaintiffs in this case other than on a contingency fee basis unless it would have be confident that it would be awarded a contingency fee of approximately 30% of the potential recovery if we were successful in our efforts.  In this case, we are requested that the court approve a notice stating that the maximum amount that counsel, and all counsel in this case, will request is no more then 30% of the of the recovery.

54.   Mallison and Martinez and the other counsel in this case have incurred substantial costs well exceeding $15,000 in this case. A large portion of the costs in this case relate to mediation and expert fees and Plaintiffs' discovery and investigative costs in the case including scanning and printing of thousands of documents in the case and travel costs associated with mediation, discovery and investigation.  The remaining costs are modest and typical of a case like this and include filing fees, travel expenses, service, fax, Westlaw etc.  Plaintiffs counsel will supply a breakdown of these fees prior to the final approval hearing.

55.   The proposed maximum request for attorneys' fees and reimbursement of costs and expenses are reasonable in light of the time and expense expended achieving the substantial benefits and should be approved.  Class Counsel reached this result for the Class at significant risk to themselves of recovering no fee.  Class Counsel was aware that the only way they would be compensated was to achieve a successful result.  Yet, Class Counsel did not waiver in pursuing the interests of the Class, and invested the time and resources necessary to bring the Action to a successful conclusion.

### VI.    Fees, Expenses, Claims Administration, and Incentive Awards

56.   I have practiced class action litigation on a near exclusive basis for approximately 15 years and am familiar with attorneys' fees, cost, and incentive award issues.  I continue to co-counsel numerous cases with large class action firms and therefore interact with them on these issues regularly. I am a member of the California Employment Lawyers Association ("CELA") and am a member of the CELA wage and hour committee. I am therefore in regular contact with other California attorneys who practice in the field of wage and hour class actions. Based on my participation in these organizations, my past experience, and my personal knowledge of the practices of other California attorneys who file and prosecute wage and hour class actions, a percentage of the recovery contingency fee of the type

requested here is common in small wage and hour actions, both individual and class. Such a fee is necessary given the expenses and risk of wage and hour litigation. Notably, there are very few law firms litigating wage and hour claims on behalf of retail workers largely because they find these expenses and risks make such litigation undesirable and unprofitable.

57. 100% of Mallison & Martinez's legal practice involves legal work that is on a contingency fee basis. Despite my firm's strong public interest perspective, my firm would not have agreed to represent plaintiffs in this case other than on a contingency fee basis unless it would have be confident that it would be awarded a contingency fee of approximately 30% of the potential recovery if we were successful in our efforts. The notice makes clear that Plaintiffs' counsel will be requesting 30% of the gross settlement amount. The Court can determine at the final approval stage the exact amount of fees justified in this case.

58. As listed below, Counsel from all firms have incurred substantial costs of $19,818.84. A large portion of the costs in this case relate to mediation fees of $2,400 and expert fees of $1,029.50. The remaining costs are modest and typical of a case like this and include filing fees, travel expenses, and Westlaw etc. The notice indicates clearly the maximum $15,000 that Plaintiffs' counsel will apply for. The amount requested is less than that amount.

Mallison & Martinez Costs:

| Category | Subcategory | Cost |
|---|---|---|
| Translation Fees | | $1,146 |
| Mediation Fees | Mediator Daniel Quinn | $2,400 |
| Expert Fees | Expert Mr. Woolfson | $1,029.50 |
| Travel Expenses | Mileage, Airfare and Parking | $1,748.89 |
| | Hotel | $324.20 |
| Photocopy Costs | Scan/Print | $1,687.50 |
| Electronic Research | Westlaw | $3,360 |
| Transcripts | | $917.95 |
| Radio Advertisement | | $501.40 |

| Filing Fee (4/21/2009) | | $350.00 |
|---|---|---|
| **TOTAL** | | **$13,465.44** |
| | | |

59. The proposed maximum request for attorneys' fees and reimbursement of costs and expenses are reasonable in light of the time and expense expended achieving the substantial benefits and should be approved. The following is a summary of the lodestar expended in this case by this firm:

| **Attorney/Professional** | **Rate** | **Hours** | **Lodestar** |
|---|---|---|---|
| Stan S. Mallison (partner) | $650 | 452.66 | $294,227.92 |
| Hector Martinez (partner) | $650 | 292.13 | $187,768.75 |
| Marco A. Palau (associate) | $525 | 129.58 | $68,031.25 |
| Joseph D. Sutton (associate) | $425 | 80 | $34,000 |
| Debbie Vanore (Paralegal) | $200 | 1.17 | $233.33 |
| Mirella Lopez (Paralegal) | $200 | 3.25 | $650 |
| Jan Spring (Paralegal) | $200 | 6.17 | $1,233.33 |
| Hector Hernandez (Paralegal) | $200 | 1.04 | $208.33 |
| Divi Martinez (Paralegal) | $200 | 7.83 | $1,566.676 |
| **TOTAL** | | | **$587,919.58** |

60. Class Counsel reached this result for the Class at significant risk to themselves of recovering no fee. Class Counsel was aware that the only way they would be compensated was to achieve a successful result. Yet, Class Counsel did not waiver in pursuing the interests of the Class, and invested the time and resources necessary to bring the Action to a successful conclusion.

**VII.   Exhibits**

61. Attached as Exhibit 1 is a true and correct copy of the Settlement Agreement. If any signatures are missing in this filing, this document will be corrected as soon as possible to provide for all signatures.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 1st day of May, 2013 at Oakland, California.

/s/ Stan S. Mallison
Stan S. Mallison