1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FERNANDO RODRIGUEZ, and GUADALUPE HERERRA, on behalf of themselves and all others similarly situated, | ) Case No.: 1:09-cv-00700 - AWI - JLT ) ) FINDINGS AND RECOMMENDATIONS |
| Plaintiffs, | ) GRANTING PLAINTIFFS' MOTION FOR FINAL ) APPROVAL OF CLASS SETTLEMENT ) |
| v. | ) (Doc. 52) ) |
| D.M. CAMP & SONS, | ) ) |
| Defendants. | ) ) |

Fernando Rodriguez and Guadalupe Herrera ("Plaintiffs") request final approval of a class settlement. (Doc. 52). Specifically, Plaintiffs seek: (1) certification of the settlement class; (2) final approval of the settlement; (3) awards to class representatives in the amount of $10,000 each; (4) attorney's fees in the amount of $202,500 to class counsel; (5) an award of costs in the amount of $15,000 to class counsel; (6) payment to the settlement administrator in the amount of $23,000; (7) payment of $15,000 to the California Labor Workforce Development Agency; (8) approval of the method for distribution of funds; and (9) entry of judgment. (Doc. 52 at 2). Defendant D.M. Camp & Sons ("Defendant") has not opposed the motion, and no objections were filed by class members.

The Court determined the matter was suitable for decision without oral argument and took the matter under submission pursuant to Local Rule 230(g). (Doc. 59). For the following reasons, the Court recommends Plaintiffs' motion for final approval of class settlement be **GRANTED**.

1

## FACTUAL AND PROCEDURAL HISTORY

On November 9, 2005, "Doe" plaintiffs initiated an action against table grape growers based in Kern County, including D.M. Camp & Sons; Stevco, Inc.; Marko Zaninovich, Inc.; Sunview Vineyards of California; Guimarra Vineyards Corp.; El Rancho Farms; Castlerock; and FAL, Inc.[1]  *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).  Plaintiffs alleged that they were former and current employees of the defendants.  *Id.* at 1156.

Defendants in the *Doe* action, including D.M. Camp & Sons, filed motions to dismiss the operative complaint, which were granted by the Court on March 31, 2008.  Likewise, the Court granted motions to sever the action, and the Court directed the plaintiffs to file amended pleadings against each defendant to effectuate the severance.  On May 29, 2008, Fernando Rodriguez and Guadalupe Herrera were named as plaintiffs in the Third Amended Complaint against D.M. Camp & Sons.  (*Doe*, Doc. 170).  On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new case number within twenty days to finalize the severance.  (*Doe*, Doc. 240).

On April 20, 2009, Plaintiffs filed their complaint against D.M. Camp & Sons.  (Doc. 1 at 1).  The complaint alleges: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq.*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq.*; breach of contract; and violation of unfair competition law.  (*Id.*)  Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California."  (*Id.* at 4).

The parties engaged in private mediation with Daniel Quinn, and the matter was resolved after

---

[1]  The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records.  *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).  Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS.

2

"numerous sessions and telephone calls coving a period well in excess of one year." (Doc. 54 at 9). Thereafter, Plaintiffs filed a motion for preliminary approval of class settlement on November 2, 2012. (Doc. 37). The Court held a hearing on December 6, 2012 (Doc. 44), after which preliminary approval of the class settlement was granted. (Doc. 45).

Due to difficulties in preparing the necessary class data, the parties requested a continuation of applicable deadlines and continuation of the Final Approval and Fairness Hearing. (Doc. 47). The parties reported Defendant discovered "a large number of class members with very small (1 or 2 pay period) claims" while gathering the class data, and estimated there were "approximately 900 class member[s] with de minimus claims" that had not been identified previously. (*Id.* at 2., n.1.) Therefore, the Court extended the applicable deadlines, and ordered the Settlement Administrator to mail the approved Class Notice Packet on or before March 11, 2011. (Doc. 48 at 2). In addition, the Court ordered class members to submit claim forms or file any objections to the Settlement Agreement no later than April 24, 2013. (*Id.* at 2).

On March 1, 2013, the parties notified the Court that Defendant was "unable to produce current addresses and social security numbers for a substantial minority of the Class Members – particularly those with short work histories with Defendant due to their labor being secured through farm labor contractors." (Doc. 49 at 2). Plaintiffs proposed running broadcasts on a Spanish-language station in an effort to increase claim rates. (*Id.*) The Court approved this proposal on March 4, 2013. (Doc. 50).

In compliance with the deadlines set forth by the Court, Plaintiffs filed their motion for final approval of the class settlement and supporting documents on May 1, 2012. (Docs. 52-58).

## SETTLEMENT TERMS

Pursuant to the proposed settlement ("the Settlement"), the parties agreed to a gross settlement amount of $675,000. (Settlement § III.A, Doc. 53-1 at 5). Defendant agreed to fund the settlement by January 15, 2013 (Doc. 53-1 at 11), and Plaintiffs report the amount has been paid. (Doc. 54 at 7).

## I.   Payment Terms

The settlement fund covers payments to qualified class members with additional compensation to class representatives. (Settlement § III.B.1, Doc. 53-1 at 5). Also, the Settlement provides for attorneys' fees and expenses, as well as payments to the settlement administrator and the California

Labor & Workforce Development Agency.  (Settlement § III.B; Doc. 53-1 at 5-6).  Specifically, the Settlement provides:

- • Class representatives will receive up to $10,000 each;

- • Class counsel will receive no more than $225,000 for attorneys' fees, which equals 33.33% of the gross settlement amount, and $15,000 for expenses;

- • The California Labor and Workforce Development Agency shall receive $15,000; and

- • The Settlement Administrator will receive up to $23,000 for fees and expenses.

 (*Id.* at § III.B; Doc. 54 at 7).  After these payments are made, the remaining money ("Net Settlement Fund") will be distributed as settlement shares.  (*Id.* at § III.D; Doc. 53-1 at 6).

To receive a share from the Net Settlement Fund, a class member was required to submit a timely and valid claim form.  (Settlement §§ I.B, III.D; Doc. 53-1 at 6).  Settlement shares will be calculated with the following formula: "(a) the Claimant's total number of Months of Employment[2] during the Class Period[3] (b) divided by the aggregate number of Months of Employment of Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Fund."  *Id.*  Thus, the amount an individual receives depended upon the number of class members who submitted timely and valid claim forms.  According to the parties, 171 valid claims were made, and if the Settlement is approved, the average claim will be "approximately $2,204.68 per worker."  (Doc. 54 at 12, 26).

The entire Net Settlement Fund will be distributed, but if any checks are not cashed, that money will be distributed to a charity of Defendant's choice.  (Doc. 54 at 7).  Payments will not be made to individuals who elected to exclude themselves from the class or failed to submit a timely and valid claim.  *Id.* at 10.

## II.      Releases

The Settlement provides that Plaintiffs and class members, other than those who elect not to

---

[2] "Months of Employment" is defined as "months during the Class Period that the Class Member was an active employee or joint employee of Defendant."  (Settlement § I.U; Doc. 53-1 at 3).

[3] "Class Period" is defined as "the period of time from November 17, 2001 to December 31, 2006."  (Settlement, § I.K; Doc. 53-1 at 2).

participate in the Settlement, shall release Defendant from the claims arising in the class period at the time final judgment is entered.  The release for class members provides:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendant, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims").  The Class's Released Claims are limited to the time period November 17, 2001 to December 31, 2006 for claims for alleged unpaid wages, overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.

(Settlement § III.G.2; Doc. 53-1 at 13-14).  The release for Plaintiffs provides for "any and all claims arising from or related to the matters alleged in the Action."  (*Id.* at § III.G.1).  Thus, the release for class representatives encompasses more clans than the release of class members.

Defendant mutually releases Plaintiffs and class members from "claims arising from or related to Defendant's employment during the time period November 17, 2001 to December 31, 2006 of Plaintiffs and Participating Class Members, including . . . all claims arising from or related to the matters alleged in the Action."  (Settlement § III.G.3; Doc. 53-1 at 14).

### III.     Objections and Opt-Out Procedure

Any class member who wished had an opportunity to object or elect not to participate in the Settlement.  The Notice of Proposed Settlement ("the Notice") explained the procedures to "claim a share of the settlement, comment in favor of the settlement, object to the settlement, or elect not to participate in the settlement."  (Doc. 41-2 at 2-3).  In addition, the Notice explained the release of claims by class members pursuant to the Settlement.  (*Id.* at 6-7).

### IV.     Service of the Notice Packets and Responses Received

On January 1, 2013, the Settlement Administrator, Simpluris, Inc. ("Simpluris") received the Court-approved Notice Packet, which included the Notice, Claim Form, and Exclusion Form.  (Butler Decl. ¶ 5; Doc. 55 at 3).  Mary Butler, case manager for Simpluris, reports that Notice Packets were mailed to 1,132 class members identified by Defendant on March 11, 2013.  (*Id.* ¶ 8).  Notice Packets

5

were not mailed to 590 class members because addresses and Social Security numbers were not available.  (*Id.*)  Also, four individuals who contacted Simpluris should have been included in the class, and they received Notice Packets from Simpluris.  (*Id.* ¶ 10).

The United States Postal Service returned 381 Notice Packets as undeliverable.  (Butler Decl. ¶ 10).  Simpluris attempted to locate current addresses for these individuals, and re-mailed 197 of the Notice Packets.  (*Id.*)  After the additional searches for correct addresses, 178 Notice Packets remained undeliverable.  (*Id.*)  On April 10, 2013, Simpluris mailed a reminder to the 1,044 class members who had not submitted a Claim Form or an Exclusion Form.  (*Id.* ¶ 11; Doc. 55-2 at 3).

Ultimately, Simpluris received a total of 171 claim forms from a total of 1,136 class members with addresses.  (Butler Decl. ¶ 12).  According to Ms. Butler, the claims received "represent 15.05 % of the entire Settlement Class that contained addresses."  (*Id.*).  Only one individual completed a valid request for exclusion, and no objections to the Settlement were filed.  (*Id.* ¶¶ 14-15).

## APPROVAL OF A CLASS SETTLEMENT

### I.      Legal Standard

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### II.     Certification of a Class for Settlement[4]

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed class is comprised of "nonexempt

---

[4] Because the class was only conditionally certified upon preliminary approval of the Settlement, final certification of the Settlement Class is required.

6

field workers who have been employed or jointly employed by Defendant and any Farm Labor Contractor utilized on land owned by Defendant and as regular non-exempt grape worker agricultural employees between 2001 and 2006."  (Doc. 53-1 at 1).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  Plaintiffs argue class certification should be granted because "[e]very requirement of Rule 23 is satisfied with respect to this proposed settlement class."  (Doc. 54 at 20-21).

**A.    Rule 23(a) Requirements**

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982) (citation omitted).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

**1.    Numerosity**

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Jordan v. county of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (finding the numerosity requirement was "satisfied solely on the basis of the number of ascertained class members" and identifying cases in which courts certified classes with fewer than 100 members), *vacated on other grounds*, 469 U.S. 810 (1982).  Plaintiffs assert "class Notice Packets were mailed to 1,132 class members."  *Id.* at 13 (citing Butler Decl. ¶ 11).  Joinder of

7

this many individuals would be impractical, and as such the numerosity requirement is satisfied.

### 2.   Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Dukes*, 131 S. Ct. at 2551. In this case, for purposes of settlement, the parties agree the following common questions of fact and law exist:

- whether Defendant failed to provide farm workers with required meal periods;

- whether Defendant failed to pay farm workers [sic] wages for meal periods during which they remained on duty;

- whether Defendant authorized and permitted the farm workers to take required rest periods;

- whether Defendant failed to pay farm workers an additional hour of wages for missed meal periods and rest breaks;

- whether Defendant failed to pay all legally required minimum wages and overtime compensation;

- whether hourly production workers are owed waiting time penalties because Defendant allegedly willfully failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and

- whether Defendant's business practices violated Business and Professions Code section 17200 *et seq.*

(Doc. 42 at 11-12). Based upon the stipulation of the parties that these questions are shared by prospective class members, the Court finds this sufficient to satisfy the commonality requirement.

### 3.   Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976

1  F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac.*

2  *Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995).

3          In the operative complaint, Plaintiffs allege they were employed by Defendant during the

4  relevant time period.  (Doc. 1 at 2-3).  The parties agreed Plaintiffs "were paid under the same pay

5  practices as every other class member."  (Doc. 42 at 12).  Plaintiffs contend they have "claims similar

6  and typical of the rest of the Class since they suffered similar injuries and have the same interest in

7  redressing [the injuries]."  (Doc. 54 at 21-22).  Accordingly, the typicality requirement is satisfied.

8                        4.        Fair and Adequate Representation

9          Absentee class members must be adequately represented for judgment to be binding upon

10  them.  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, the Court must determine the

11  "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

12  23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named

13  plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

14  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego*

15  *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

16                        a.        *Class counsel*

17          As the Court noted previously, Mr. Mallison and Mr. Martinez have significant experience

18  litigating wage and hour class action cases and in serving as class counsel.  (Doc.  45 at 8).  In

19  addition, Defendant offers no opposition to the adequacy of counsel and, therefore, the Court finds

20  counsel satisfy the adequacy requirements.

21                        b.        *Class representatives*

22          Plaintiffs Fernando Rodriguez and Guadalupe Herrera seek to appointment as the class

23  representatives and contend "the named plaintiffs . . . are adequate class representatives."  (Doc. 54 at

24  23) (emphasis omitted).  Plaintiffs' claims are typical of the class members, and there are no noted

25  conflicts between the claims of Plaintiffs and those of the class members.  Therefore, it appears

26  Plaintiffs will fairly and adequately represent the interests of the class.

27      **B.        Certification of a Class under Rule 23(b)**

28          As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified

9

1  if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.

2  According to Plaintiffs, certification of the class is appropriate under Rule 23(b)(3).  (Doc. 54 at 22).

3       Rule 23(b)(3) requires a finding that (1) "the questions of law or fact common to class members

4  predominate over any questions affecting only individual members," and (2) "a class action is superior

5  to other available methods for fairly and efficiently adjudicating the controversy."  These requirements

6  are generally called the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at

7  1022-23; *see also Wal-mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings

8  about predominance and superiority before allowing the class").

9              1.    Predominance

10      The predominance inquiry focuses on "the relationship between the common and individual

11  issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

12  representation."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth

13  Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether

14  'adjudication of common issues will help achieve judicial economy.'"  *Vinole v. Countrywide Home*

15  *Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc*., 253 F.3d

16  1180, 1189 (9th Cir. 2001)).

17      Plaintiffs contend "the issues of Defendants' alleged failure to pay Class Members minimum

18  wage, overtime, and rest and meal period violations create common issues that predominate over

19  individual questions."  (Doc. 54 at 22).  In addition, the parties agreed common questions predominate

20  over any questions affecting individual class members.  (*Id.*)

21              2.    Superiority

22      The superiority inquiry requires a determination of "whether objectives of the particular class

23  action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted).

24  This tests whether "class litigation of common issues will reduce litigation costs and promote greater

25  efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule

26  23(b)(3), the Court should consider four non-exclusive factors to determine whether a class is a

27  superior method of adjudication, including (1) the class members' interest in individual litigation, (2)

28  other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4)

difficulties with the management of the class action.

> a.     *Class members' interest in individual litigation*

Plaintiffs contend "[t]his factor is more relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation." (Doc. 53 at 22) (citing *In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)). Because the monetary damages each class member will receive "are relatively modest," Plaintiffs assert the factor weighs in favor of class certification. (*Id.* at 22-23). As there is no evidence the putative class members have an interest in pursuing or controlling individual cases, this factor weighs in favor of class certification.

> b.     *Other pending litigation*

According to Plaintiffs, "The only known litigation concerning the controversy is the case at issue in this settlement." (Doc. 54 at 23). As a result, this factor weighs in favor of certification.

> c.     *Desirability of concentrating litigation in one forum*

Because common issues predominate on Plaintiffs' class claims, "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011). Moreover, because the parties have resolved the claims through the Settlement, this factor does not weigh against class certification.

> d.     *Difficulties in managing a class action*

The Supreme Court explained, in general, this factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). However, because the parties have reached a settlement agreement, it does not appear there are any problems with managing the action. Therefore, this factor weighs in favor of class certification.

Because the factors set forth in Rule 23(b) weigh in favor of certification, the Settlement Class is maintainable under Rule 23(b)(3). Accordingly, the Court recommends Plaintiffs' request to certify the Settlement Class be **GRANTED.**

## III.     Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a

hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary obligations to the

class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit set

forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of
> further litigation; the risk of maintaining class action status throughout the trial; the
> amount offered in settlement; the extent of discovery completed, and the stage of the
> proceedings; the experience and views of counsel; the presence of a governmental
> participant;[5] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the

product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at

458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). When reviewing the

settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact

and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal

quotations and citation omitted).

### A.     Strength of Plaintiffs' Case

In this action, there are several disputed claims the fact-finder would be required to determine.

Plaintiffs observe, "wage and hour cases on behalf of low wage workers can [be] difficult to prove on

a class basis especially given the changing and uncertain legal environment." (Doc. 54 at 16-17). In

addition, Plaintiffs contend "there are clear uncertainties surrounding [their] ability to prove their

claims given the unpredictability of a lengthy and complex jury trial." (*Id.* at 17). Given the

uncertainties, this factor weighs in favor of approval of the Settlement.

### B.     Risk, Expense, Complexity, and Likely Duration of Further Litigation

Settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l*

*Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the Settlement

were to be rejected, the parties would have to engage in further litigation, including re-certification of

the class and discovery on the issue of damages. Plaintiffs observe: "There is no guarantee of class

---

[5] This factor does not weigh in the Court's analysis because the government is not a party in this action. However, the Settlement Agreement provides a payment of $15,000 to the California Labor and Workforce Development Agency because the PAGA claim allows Plaintiffs to act as a "private attorney general" on behalf of the State.

certification relating to a myriad of legal and factual issues in this case." (Doc. 54 at 17). On the other hand, the settlement provides for the immediate recovery for the class, averaging approximately $2,300 per claimant. (*Id.*) Therefore, this factor weighs in favor of approval of the Settlement.

### C.       Maintenance of Class Status throughout the Trial

Plaintiffs acknowledge that even if they demonstrate wage and hour violations by Defendant, "there is significant risk that the case may not survive a contested class certification proceeding." (Doc. 54 at 17). Notably, given the recent ruling of the California Supreme Court in *Brinker Restaurant Corp. v. Superior Court*, class certification for Plaintiffs' claims regarding missed meal breaks would be more difficult. *See Brinker*, 53 Cal.4th 1004, 1040-41 (Cal. 2012) (holding the employer is required to provide a meal period to employees, but "is not obligated to police meal breaks and ensure no work thereafter is performed"); *see also Brown v. Federal Express*, 239 F.R.D. 580, 585 (C.D. Cal. 2008) (denying class certification of employees alleging the employers denied them meal breaks and rest breaks, and failed to give additional pay to employees who missed meal breaks). Thus, this factor supports approval of the Settlement.

### D.       Amount offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625, 628.

Here, the proposed gross settlement amount is $675,000. Class Counsel asserts this amount "will not put . . . Defendant's operations at risk or endanger the continued employment of currently employed class members." (Mallison Decl. ¶ 45, Doc 53 at 14). Also, "Plaintiffs believe that the recovery obtained of approximately $675,000 or nearly $2,204.68 per claimant net of all fees and expenses is a good settlement result in a wage and hour case involving low-income farm workers." (Doc. 54 at 20). Based upon the parties' agreement that this amount provides adequate compensation for class members, this factor supports approval of the Settlement.

**E.      Extent of Discovery Completed and Stage of the Proceedings**

Defendant has been litigating this action since 2005, and with the named Plaintiffs since 2008. Plaintiffs assert: "Plaintiffs conducted significant discovery ultimately procuring all of the core timekeeping and payroll documents in this case.  Further, dozens of in depth interviews of Class members were conducted. Plaintiffs' litigation and mediation of this case was informed by a thorough review of these documents and based on those in depth Class member interviews."  (Doc. 54 at 18) (citations omitted).  Plaintiffs assert that "by the time the settlement was reached, the litigation had proceeded to a point at which both Plaintiffs and Defendant had a clear view of the strengths and weaknesses of their cases."  *Id.* (internal quotation marks, citation omitted).  Thus, the parties made an informed decision regarding settlement of the action, and determined to resolve the matter with the assistance of a mediator, Daniel Quinn.  (Doc. 54 at 9, 18).  Consequently, this factor favors approval of the Settlement.

**F.      Experience and Views of Counsel**

As addressed above, Class Counsel are experienced in class action litigation.  Based upon the investigation and discovery conducted in the matter, Mr. Mallison believes "the terms set forth in the Settlement Agreement [are] fair, reasonable and adequate," and the settlement is "in the best interest of the putative class members."  (Mallison Decl. ¶ 45, Doc 53 at 14).  Likewise, Defendant and its counsel believe the agreement "reflects a fair, reasonable, and adequate settlement of the [a]ction." (*See* Doc. 53-1 at 16).  Both parties have weighed the strengths and weaknesses of their respective positions and endorse the Settlement.  This recommendation of counsel is entitled to significant weight, and weighs in favor of settlement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

**G.      Reaction of Class Members to Settlement**

No objections were filed by class members after service of the Notice Packet.  (Doc. 54 at 20). In addition, Plaintiffs agreed to settle the action, and do not have any objections to the Settlement. (*See* Rodriguez Decl. ¶ 10, Doc. 39 at 3; Herrera Decl. ¶ 10, Doc. 40 at 3).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms

14

1    of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms.*,

2    221 F.R.D. at 529.  Therefore, this factor supports approval of the Settlement.

3         **H.**    **Collusion between Negotiating Parties**

4         The inquiry of collusion addresses the possibility that the settlement agreement is the result of

5    either "overt misconduct by the negotiators" or improper incentives of class members at the expense of

6    others.  *Staton*, 327 F.3d at 960.  The parties utilized an impartial mediator, and settlement agreement

7    "is based upon a mediator's proposal."  (Doc. 54 at 20).  Accordingly, the agreement appears to be is

8    the product of non-collusive conduct.

9    **IV.**    **Conclusion**

10        The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement,

11   which appears to be is fair, reasonable, and adequate as required by Rule 23.  Therefore, the Court

12   recommends final approval of the Settlement Agreement be **GRANTED**.

13                      **REQUEST FOR FEES AND COSTS**

14        Class Counsel seek an award of 30% of the settlement fund (equaling $202,500) and $15,000 in

15   costs.  (Doc. 54 at 25).  Attorneys' fees and nontaxable costs "authorized by law or by agreement of the

16   parties" may be awarded pursuant to Rule 23(h).  Under the "common fund" doctrine, attorneys who

17   create a common fund for a class may be awarded their fees and costs from the fund.  *Hanlon*, 150 F.3d

18   at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund

19   for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from

20   the fund as a whole").  An award from the common fund "rests on the perception that persons who

21   obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful

22   litigant's expense," and as such application of the doctrine is appropriate "when each member of a

23   certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum

24   judgment recovered on his behalf."  *Boeing Co.*, 444 U.S. at 478.  Here, the Settlement applies a

25   distribution formula to determine the amount paid to each class member who submitted a valid claim,

26   and application of the common fund doctrine is appropriate.

27        Notably, "when fees are to come out of the settlement fund, the district court has a fiduciary

28   role for the class."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).  Fees must be

1    "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 964.  Accordingly, the Ninth

2    Circuit instructs that "a district court must carefully assess the reasonableness of a fee amount spelled

3    out in a class action settlement agreement." *Id.* at 963.

4    **I.      Documentation of hours expended**

5         In general, the party seeking fees bears the burden of establishing that the fees and costs were

6    reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115,

7    1119 (9th 2000).  Therefore, a fee applicant must provide time records documenting the tasks

8    completed and the amount of time spent.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v.*

9    *Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

10        Here, Defendant has agreed Class Counsel may request fees up to 33.33% of the Gross

11   Settlement Amount.  (Doc. 53-1 at 5).  Nonetheless, a court "may not uncritically accept a fee request,"

12   but must review the time billed and assess whether it is reasonable in light of the work performed and

13   the context of the case.  *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see*

14   *also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt

15   representations regarding the reasonableness of time expended without independently reviewing the

16   record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a

17   thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of

18   adopting the findings drafted by the prevailing party wholesale" and explaining a court should not

19   "accept[] uncritically [the] representations concerning the time expended").  "Where the documentation

20   of hours in inadequate, the district court may reduce hours accordingly."  *Hensley*, 461 U.S. at 433.

21   **II.      Determination of Fee Award**

22        The Ninth Circuit has determined both lodestar and percentage of the common fund methods

23   "have [a] place in determining what would be reasonable compensation for creating a common fund."

24   *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Whether a court applies

25   the lodestar or percentage method, the Ninth Circuit "require[s] only that fee awards in common fund

26   cases be reasonable under the circumstances."  *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).

27        **A.      Lodestar method**

28        The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably

16

expended by counsel on the particular matter times a reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433).  Thus, the first step in determining the lodestar is to determine whether the number of hours expended was reasonable.  *Id.* at 1119.  Here, Plaintiffs' counsel provide lists of each attorney who worked on this action, the number of hours, and the rate billed by each.  (Doc. 53 at 19; Doc. 56 at 18; Doc. 57 at 4).  However, the attorneys do not provide any information regarding what activities were undertaken during this time.  Consequently, the Court is unable to determine whether the time set forth by each attorney is reasonable or compensable.  Significantly, the Ninth Circuit observed, "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Because the information provided by counsel is insufficient to determine whether the time expended was reasonable, the Court will not apply the lodestar method.  *See Jones v. GN Netcom, Inc.*, 654 F.3d 935, 941 (9th Cir. 2011) (observing "[t]he lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (*as supported by adequate documentation*) by a reason-able hourly rate for the region...") (emphasis added).

**B.     Percentage of Common Fund**

As the name suggests, under this method, "the court makes a fee award on the basis of some percentage of the common fund." *Florida*, 915 F.2d at 545 n. 3.  In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark award for attorney fees").  The percentage may be adjusted below or above the benchmark "to account for any unusual circumstances," but reasons for adjustment must be clear. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

When assessing whether the percentage requested is reasonable, courts may consider a number of factors, including "(1) the results obtained for the class; (2) the risk undertaken by counsel; (3) the complexity of the legal and factual issues; (4) the length of the professional relationship with the client; (5) the market rate; and (6) awards in similar cases." *Romero v. Produces Dairy Foods, Inc.*,

1   2007 U.S. Dist. LEXIS 86270, at *8-9 (E.D. Cal. Nov. 14, 2007) (citing *Vizcaino v. Microsoft Corp.*,

2   290 F.3d 1043, 1048-1050 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

3   1301, 1311 (9th Cir. 1990)).

4           1.      Results obtained for the class

5           The result achieved is a significant factor to be considered in making a fee award. *Hensley*, 461

6   U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994).  Class Counsel asserts the facts in

7   this action "do not generally produce recoveries in the thousands of dollars." (Doc. 54 at 26).

8   However, the estimated average award exceeds $2,000 per claimant, and the highest award is estimated

9   to be approximately $17,300.  (Butler Decl. ¶ 13; Doc. 55 at 4).  Recently, the Court determined such

10  results weigh in favor of a higher award.  *See Morales v. Stevco, Inc.*, 2013 U.S. Dist. LEXIS 41799, at

11  * 7 (E.D. Cal. Mar. 25, 2013).

12          2.      Risk undertaken by counsel

13          The risk of costly litigation and trial is an important factor in determining the fees to be

14  awarded.  *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994).  Class counsel

15  contend the request of 30% is justified, in part, due to "significant risks to Plaintiffs' core theories of

16  liability for unpaid minimum wages." (Doc. 54 at 27).  In addition, they "invested $888,878 in

17  lodestar . . . with no guarantee o[f] recovery." (*Id.* at 29).

18          The Supreme Court explained, "the risk of loss in a particular case is a product of two factors:

19  (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of

20  Burlington v. Dague*, 505 U.S. 557, 562 (1992).  In a related action, the Court observed the "factual

21  merits of the case are straightforward," but "Plaintiffs' counsel faced significant risk on the legal

22  merits." *Morales*, 2013 U.S. Dist. LEXIS 41799, at * 8.  Accordingly, this factor weighs slightly in

23  favor of a departure from the benchmark fee award.  *See id.*

24          3.      Complexity of issues and skill required

25          The complexity of issues and skills required may support a fee award greater than the

26  benchmark.  *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept.

27  2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court

28  observed the case involved "complex issues of constitutional law in an area where considerable

1    deference is given to jail officials," and the action "encompassed two categories of class members");

2    *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005)

3    ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are

4    significant factors in determining a fee award").

5         Here, Class Counsel contend this action "required exceptional skill in finding and contacting

6    largely Spanish speaking workers, litigating over cutting edge legal theories surrounding the

7    Agricultural Worker's Protection Act, rest and meal periods and issues of proof in light of the limited

8    recording keeping by Defendant."  (Doc. 54 at 27).  However, as noted above, counsel have not

9    provided timesheets such that the Court may determine the amount of time or skill required for "finding

10   and contacting . . . Spanish speaking workers."  *See Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS

11   70390, at *27 (E.D. Cal. June 30, 2011) (observing "locating and contacting over 500 members of the

12   class, communicating with over 250 class members to ensure they received appropriate forms, [and]

13   obtaining new contact information for some members of the class . . . is entirely administrative work

14   that could be accomplished by paralegals").

15        On the other hand, in *Morales* the Court observed: "California wage and hour law is extremely

16   complex and the statutory/administrative language can be particularly difficult to parse."  *Id.*, 2013 U.S.

17   Dist. LEXIS 41799, at *8.  Given the complexities of California law, this factor weighs in favor of a

18   higher award.  *Id.*

19              4.    Length of professional relationship

20        Class Counsel do not address the length of the professional relationship.  Fernando Rodriguez

21   and Guadalupe Herrera were identified as plaintiffs in the Third Amended Complaint against D.M.

22   Camp & Sons in the *Doe* action on May 29, 2008, prior to the Court's severance of the action. Though

23   counsel have spent several years on this action, this factor does not weigh in favor of departure from

24   the benchmark.  *See Six Mexican Workers*, 904 F.2d at 1311 (the litigation lasted more than a decade,

25   but "[n]othing in this case requires departure from the 25 percent standard award").

26   ///

27              5.    Market Rate

28

19

Previously, this Court observed, "Prevailing hourly rates in the Eastern District of California are in the $400/hour range." *Bond*, 2011 U.S. Dist. LEXIS 70390, at *30. The hourly rates sought by attorneys on this action range from $425 to $725 per hour. (*See* Doc. 53 at 19; Doc. 56 at 18; Doc. 57 at 4). These hourly wages exceed those generally awarded in the Eastern District. Further, because the attorneys have not provided information on the services provided or tasks completed, the Court is unable to determine whether the rates requested are reasonable. Therefore, this factor weighs against a departure from the benchmark.

6.      Awards in similar cases

Plaintiffs' counsel contend "the requested fee is in line with similar wage and hour cases litigated in the Eastern District. (Doc. 54 at 28). Specifically, Plaintiffs identify the following rewards:

1.      30% in *Morales v. Stevco*, E.D. Cal. Case No. 1:09-cv-00704-AWI-JLT;

2.      30% in *Vasquez v. Aartman*, E.D. Cal. Case No. 1:02-CV05624 AWI-LJO;

3.      31.25% in *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729-AWI-LJO;

4.      33% in *Randall Willis et al. v. Cal Western Transport, and Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695

5.      33% in *Benitez, et al. v. Jeff Wilbur and Lisa Wilbur*, Case No. 1:08-cv-01122-LJO-GSA; and

6.      33% in *Chavez, at al. v. Petrissans*, Case No. 1:08-cv-00122-LJO-GSA

(*Id.*) Further, Plaintiffs' counsel assert similar awards are granted in wage and hour class actions litigated in the state court. (*Id.*) Accordingly, comparable class action cases appear to have awarded thirty-percent of the common fund, as requested by Class Counsel. Thus, this factor weighs in favor of departure from the benchmark.

## C.      Amount of Fees to be Awarded

As set forth above, the factors set forth by the Ninth Circuit in *Vizcaino* and *Six Mexican Workers* weigh slightly in favor of a departure from the benchmark. Accordingly, the Court recommends Class Counsel's request for 30% of the Settlement Fund – which amounts to $202,500 – be **GRANTED**.

///

**III.     Expenses of the Action**

    **A.     Litigation**

    The reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54.  Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  In this case, Class Counsel seeks a total reimbursement of $15,000 for costs incurred in the course of this action.  (Doc. 54 at 29).  According to Class Counsel, the costs incurred exceed the amount requested:

> In the course of this litigation, Class Counsel had to incur out-of-pocket costs totaling $19,818.84 ($13,465.44, Mallison Decl. ¶58; $3,716.12, Rich Decl. ¶12; $2,637.28, Duckett Decl. ¶8) and expect to incur modest additional in costs related to the final approval of the Settlement. *See* Settlement Agreement III.B.1. The bulk of the incurred costs included filing fees, mediator fees, ground transportation, copy charges, computer research, and database expert fees. Mallison Decl. ¶ 58.

(*Id.* at 31).  Previously, this Court observed costs "including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees ... are routinely reimbursed." *Alvarado v. Nederend*, 2011 U.S. Dist. LEXIS 52793, at *27-28 (E.D. Cal. Jan. 11, 2011).  Therefore, the Court recommends counsel's request for costs in the amount of $15,000 be **GRANTED**.

    **B.     Claims Administration**

    Pursuant to the parties' proposal, the Court appointed Simpluris to serve as the Settlement Administrator.  (Doc. 45 at 16).  Under the terms of the Settlement, its duties included:

> preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a National Change of Address search on any Class Notice Packet returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice Packet to the Class Member's new address; receiving and reviewing for validity completed Claim Forms and Elections Not to Participate in Settlement; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed Claim Forms and Elections Not to Participate in Settlement; providing the parties with the received Claim Forms; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; distributing any remaining funds as directed by the court; and otherwise administering the Settlement pursuant to this Agreement.

(Settlement § III.E, Doc. 53-1 at 6-7).  According to Mary Butler, case manager for Simpluris, the administrative fees and costs totaled $23,000, "which includes all work to conclude Simpluris' duties and responsibilities pursuant to the settlement."  (Butler Decl. ¶ 19; Doc. 55 at 3).

The requested amount is within the range of previous costs for claims administration awarded in the Eastern District.  *See, e.g.*, *Bond*, 2011 U.S. Dist. LEXIS 70390 ($18,000 administration fee awarded in a wage an hour action involving approximately 550 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee in a wage and hour case involving 170 potential class members).  Therefore, the Court recommends the request for $23,000 in expenses for the settlement administration by Simpluris be **GRANTED**.

<u>**INCENTIVE PAYMENTS**</u>

Fernando Rodriguez and Guadalupe Herrera request class representative incentive payments of $10,000 each.  (Doc. 54 at 32).  The Court has discretion to award a class representative a reasonable incentive payment.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463. However, incentive payments are not to be given routinely.  The Ninth Circuit observed,

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

*Staton*, 327 F.3d at 975.

**I.    Whether Incentive Payments are Appropriate**

Evaluating a request for an enhanced award to a class representative, the Court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Id.* at 977.  Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

**A.    Actions taken to benefit the class**

Plaintiffs assert the payments to the class representatives are "intended to recognize the time and efforts that the named Plaintiffs spent on behalf of the Class Members."  (Doc. 54 at 29).  Plaintiffs report they participated in two mediation sessions, produced evidence to support their claims, and

assisted with "investigating and substantiating the claims alleged." *Id.* at 30. In addition, Plaintiffs report they "sacrificed any additional claims that they may have had against the Defendants whether they be related to the claims raised in the case or not . . . [as] a condition of the settlement," and "these rights were sacrificed by the plaintiffs for the benefit of the class." *Id.* The actions taken by Plaintiffs support incentive payments.

### B.    Amount of time expended by class representatives

In their respective declarations, Fernando Rodriguez and Guadalupe Herrera each report they each spent *exactly* 117 hours on tasks including discussions with counsel and class members, document preparation and review, and mediation.[6]  (*See* Rodriguez Decl. ¶ 10; Herrera Decl. ¶ 10). Specifically, Plaintiffs identify the following tasks and time:

| TASK | TIME |
| --- | --- |
| Initial Discussion with Counsel, including travel time | 6 hours |
| Review and Translation of Settlement | 3 hours |
| Review and Translation of Complaint | 3 hours |
| Gathering, Reviewing, and Organizing records for investigation | 6 hours |
| Consultation with Class Counsel and Plaintiffs regarding the status of case | 20 hours |
| Helping attorneys with investigative processes | 40 hours |
| Mediation in Bakersfield, CA, including travel time & Preparation | 9 hours |
| Mediation in Stockton, CA, including travel time & Preparation | 18 hours |
| Deposition, including travel time & Deposition Preparation | 12 hours |

(*Id.*)  Accordingly, it appears Plaintiffs spent a number of hours on this action by providing assistance with discovery and attending the mediation sessions and this factor supports class representative incentive payments to Plaintiffs.

///

---

[6] Previously, in granting preliminary approval of the settlement, the Court commented,

The Court finds dubious that each class representative spent the exact same number of hours on the exact same tasks, including the same exact amount of travel time from their homes to the places of mediation. This is not the first case involving Plaintiff's counsel where this has occurred. *Morales v. Stevco, Inc.*, Case No. 1:09-cv-00704, Doc. 66 at 26.

Because counsel are bound by a duty of honesty to the Court and that the class representatives have signed their declarations under penalty of perjury, the Court accepts these representations as true. However, the Court will be hard-pressed to accept such an improbable representation a third time absent significant explanation.

(Doc. 45 at 13 n. 7)  Despite this, counsel, once again, offer these same declarations and, once again, they fail to provide any explanation as to how it is possible that two people could possibly spend the same, exact amount of time on the same, exact activities. Thus, this failure weighs in the Court's evaluation of incentive payments.

23

1

**C.      Fears of workplace retaliation**

2      Plaintiffs do not contend they feared retaliation for their connections to this action.  Thus, this

3 factor does not support incentive payments to Plaintiffs.

4 **II.      Amount to be awarded**

5      Because Plaintiffs provided assistance to counsel, participated in mediation although it required

6 traveling out of town, and met with class members, an incentive award is appropriate.  *See Rankin v.*

7 *Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (awarding an

8 incentive award because the plaintiff "retained counsel, assisted in the investigation, and was an active

9 participant in the full-day mediation").

10      Plaintiffs assert "the requested enhancement is reasonable and appropriate" because they "(1)

11 travelled from Bakersfield to Sacramento for mediation sessions; (2) assisted Counsel in investigating

12 and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in

13 this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this

14 litigation."  (Doc. 54 at 30).  Also, Plaintiffs contend they "undertook the financial risk that, in the

15 event of a judgment in favor of Defendant in this action, they could have been personally responsible

16 for the costs awarded in favor of the Defendant."  *Id.*  Although the Court preliminarily approved class

17 representative enhancement payments up to $10,000, it noted the amount appears to be excessive given

18 the facts presented of Plaintiffs involvement with the action.  (Doc. 45 at 14, n. 8) (citing *Alvarado*,

19 2011 U.S. Dist. LEXIS 52793; *Wade v. Minatta Transp. Co.*, 2012 U.S. Dist. LEXIS 12057 (N.D. Cal.

20 Feb. 1, 2012); *In re Wells Fargo Loan Processor Overtime Pay Litig.,* 2011 U.S. Dist. LEXIS 84541

21 (N.D. Cal. Aug. 2, 2011)).

22      In *Alvarado*, the Court granted an class representative incentive payments in the amount of

23 $7,500 where the named plaintiffs: "(1) travelled from Bakersfield to Sacramento for mediation

24 sessions (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3)

25 assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to

26 Counsel; and (5) assisted in the settlement of this litigation."  *Id.*, 2011 U.S. Dist. LEXIS 52793 at *19.

27 Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two named

28 plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews;

24

1    (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared

2    and evaluated the case for mediation, which was a full day session requiring very careful consideration,

3    evaluation and approval of the terms of the Settlement Agreement on behalf of the Class." *Bond*, 2011

4    U.S. Dist. LEXIS 70390, at *38-39.

5           Similarly, the Northern District determined class representatives failed to justify incentive

6    awards of $10,000 although the plaintiffs reported "they were involved with the case by interacting

7    with counsel, participating in conferences, reviewing documents, and attending the day-long mediation

8    that resulted in the settlement." *Wade*, 2012 U.S. Dist. LEXIS 12057, at *3.  The court explained the

9    brief statements in their declarations and "vague" descriptions of counsel were insufficient to justify the

10   requested payments. *Id.*  Here, Plaintiffs do not explain how they assisted counsel with investigating

11   the claims in the action, or how they assisted with the preparation of the complaint (especially given

12   that the complaint in *Doe* was filed three years prior to Fernando Rodriguez and Guadalupe Herrera

13   being identified as plaintiffs).

14          The facts presented to the Court in *Alvarado* are identical to those presented by plaintiffs

15   Fernando Rodriguez and Guadalupe Herrera in this action, and it does not appear greater incentive

16   awards are warranted.  As in *Wade*, Plaintiffs provide little information regarding the tasks undertaken

17   in the action.  Accordingly, an award of $10,000 appears to be excessive.  However, an award of

18   $7,500 conforms with other decisions by this District.  Therefore, the Court recommends Plaintiffs'

19   request for incentive payments be **GRANTED** in the amount of $7,500 each.

20                          <u>**FINDINGS AND RECOMMENDATIONS**</u>

21          Based upon the foregoing, the Court finds the settlement agreement is fair, adequate, and

22   reasonable.  Further, the factors set forth by the Ninth Circuit weigh in favor of preliminary approval

23   of the settlement agreement.  Accordingly, **IT IS HEREBY RECOMMENDED**:

24          1.      Plaintiffs' motion for final approval of the Settlement Agreement be **GRANTED**;

25          2.      Plaintiffs' request for certification of the Settlement Class be **GRANTED** and defined

26                  as follows:

27                          All nonexempt field workers who have been employed or jointly
                            employed by Defendant and any Farm Labor Contractor utilized on
28                          land owned by Defendant and as regular non-exempt grape worker
                            agricultural employees between 2001 and 2006.

                                              25

3.  All Class Members who submitted a valid Claim Form pursuant to the procedures outlined in the Notice be entitled to receive a settlement share;

4.  Plaintiffs' request for incentive payments to Class Representatives Fernando Rodriguez and Guadalupe Herrera be **GRANTED** in the amount of $7,500 each;

5.  Class Counsel's motion for attorneys fees in the amount of $202,250, which is 30% of the gross settlement amount, be **GRANTED**;

6.  Class Counsel's request for costs in the amount of $15,000 be **GRANTED**;

7.  The request for fees for the Settlement Administrator Simpluris in the amount of $23,000 be **GRANTED**;

8.  The California Labor Code Private Attorney General Act payment to the State of California in the amount of $15,000 be **APPROVED**;

9.  The action be **DISMISSED** with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

10. The Court retain jurisdiction to consider any further applications arising out of or in connection win the Settlement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 15, 2013**                        _____**/s/ Jennifer L. Thurston**_____
                                                                 UNITED STATES MAGISTRATE JUDGE